# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| MAYO CLINIC, | CASE NO. 14-CV-3844 (JNE/TNL) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | |
| Defendant. | |
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | CASE NO. 14-MC-0063 (JNE/TNL) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| MAYO CLINIC, | |
| Defendant. | |

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on two motions: Mayo Clinic ("Mayo") has filed a Petition to Quash Subpoena Duces Tecum, No. 14-cv-3844 (JNE/TNL), ECF No. 1; and the U.S. Equal Employment Opportunity Commission ("EEOC") filed a separate Motion to Show Cause Why A Subpoena Should Not Be Enforced, No. 14-mc-0063 (JNE/TNL), ECF No. 1. Based on memoranda of counsel, and all the files, records and proceedings herein, the Court will

1

recommend that Mayo's petition to quash be denied and EEOC's motion to enforce be granted.

## I. BACKGROUND

### A. Factual History

Robert Gainor applied for a medical photographer position at Mayo Clinic on September 4, 2011. (*See* Decl. of Julie Schmid, ECF No. 3 ("Schmid. Decl."), Ex. 1; *id.* Ex. 2 at 3.)[1] Mayo denied Gainor's application on September 8, 2011. (Schmid Decl., Ex. 2, at 3.) Shortly thereafter, while the hiring process for the general photography position was ongoing, Mayo created a posting for a second medical photography position. (*Id.*) This second medical photography position was in Mayo's dedicated plastic surgery studio. (*Id.*) For the position in the dedicated plastic surgery studio, Mayo expressed a preference for a female photographer. (*Id.* at 3-4.) On November 2, 2011, Gainor filed a Charge of Discrimination against Mayo Clinic alleging sex discrimination in violation of Title VII ("Charge"). (Schmid Decl., Ex. 1.) The Charge alleged that Mayo published a medical photographer job advertisement that expressly indicated a preference for female applicants and rejected Gainor's application because of his sex. (*Id.*)

Mayo responded to the Charge on December 14, 2011. Mayo indicated that Gainor applied for employment in its general photography studio and that Gainor was not hired because he failed to satisfy the position's minimum qualifications. (Schmid Decl., Ex. 2.) The EEOC issued a Request for Information on December 18, 2012 ("December RFI") seeking additional information regarding Gainor's Charge. (*Id.*, Ex. 3.) The December

---

[1] For simplicity's sake, the Court will refer to exhibits in the 14-mc-63 action unless otherwise noted.

RFI requested from Mayo, *inter alia*, "copies of all application materials received for the medical photographer positions in 2011[, and f]or each application if the applicant was not selected for an initial interview, provide the specific reason the applicant was not selected." (*Id.* at 2.) Mayo provided a written response on January 11, 2013. (*Id.*, Ex. 4.) Mayo objected to the EEOC's request for all application materials for the medical photographer positions as overly broad and unduly burdensome; nonetheless, Mayo provided: (a) a chart of applicants who did not meet the basic qualifications for the photographer positions; (b) a chart of all applicants that were forwarded to the hiring manager but not selected for an initial interview; (c) a chart of applicants selected for initial and secondary interviews; (d) applicant interview summaries; (e) job description and posting information; and (f) a list of all employees in medical photography positions. (*Id.* at 4-54.) Mayo also informed the EEOC that it had not employed a male photographer in its dedicated plastic surgery studio before, and that it did not require or keep documentation of requests for female photographers. (*Id.* at 3.)

The EEOC issued a second RFI on February 24, 2014 ("February RFI"). (*Id.*, Ex. 5.) The February RFI requested the following of Mayo:

> 1. Provide copies of all application materials including interview notes for the applicants who were interviewed for the medical photographer positions . . . . For each application, if the applicant was not selected for a position, provide the specific reason the applicant was not selected.
> 2. Update Exhibit 7 from January 11, 2013 RFI submission to include the specific studio (general surgery or dedicated plastic surgery) where the employee worked and the last known home address and telephone number for each employee.

3

3. State whether the respondent has ever considered hiring a male as a photographer in the dedicated plastic surgery studio. If yes, provide supporting documentation.
4. Provide a list of all male applicants not considered for the dedicated plastic surgery studio due to sex from January 1, 2011 to the present. Include copies of application materials for these applicants.
5. State whether applicants received preferential treatment during the application process due to sex (female). If yes, explain how.
6. Explain when the respondent started having a dedicated plastic surgery studio and provide supporting documentation.
7. Explain how the respondent determined which applications were considered for the general patient studio versus the dedicated plastic surgery studio. Provide the name and position of the decision-maker and a list of the applicants considered for each studio.
8. Provide documentation from January 1, 2011 to the present to show how many hours per week a male employee works in the dedicated plastic surgery studio.

(*Id.* at 2.) Mayo again objected to the February RFI as overbroad and unduly burdensome. In response to the February RFI, Mayo provided only cursory answers and provided no additional documentation. (*See id.*, Ex. 6.)

The EEOC served Mayo with Subpoena No. CHMN-A14-16 ("Subpoena") on March 18, 2014 by certified mail. (*Id.*, Ex. 7.) The Subpoena requested the following information:

1. Provide copies of all application materials including interview notes for the applicants who were interviewed for the medical photographer positions (as listed on Exhibit 3 of January 11, 2013 RFI submission). For each application, if the applicant was not selected for a position, provide documentation of the specific reason the applicant was not selected.
2. Provide documentation, updating Exhibit 7 from January 11, 2013 RFI submission to include the specific studio (general surgery or dedicated plastic surgery) where the employee worked and the last known home address and telephone number for each employee.

3. Provide a list of all male applicants not interviewed for a position in the dedicated plastic surgery studio due to the preference for a female from January 1, 2011 to the present. Include copies of application materials for these applicants.
4. Provide a list of all male applicants not selected for a position in the dedicated plastic surgery studio due to the preference for a female from January 1, 2011 to the present. Include copies of the application materials for these applicants.
5. Provide documentation to show when the respondent established a dedicated plastic surgery studio.
6. Provide documentation to show how the respondent determined which applications were considered for the general patient studio versus the dedicated plastic surgery studio. Provide the name and position title of the decision maker and a list of the applicants considered for each studio.
7. Provide documentation from January 1, 2011 to the present to show how many hours per week a male photographer works in the dedicated plastic surgery studio.
8. Provide a list of interviewers for the general and plastic surgery studio photography positions by name, position, sex, date of hire, date of separation (if applicable), and reason for separation (if applicable).

(*Id.*, Ex. 7.)

On March 21, 2014, Mayo filed a petition asking the EEOC to revoke the Subpoena. (*Id.*, Ex. 9.) The EEOC issued a determination denying the petition on August 29, 2014. (*Id.*, Ex. 10.) With respect to Mayo's overbreadth objection, the EEOC reasoned as follows:

> In conducting an investigation, the EEOC's inquiry is not limited to the specific circumstances contained in a charge of discrimination because the EEOC's investigatory authority "serves a greater purpose than just investigating a charge on behalf of an individual." *Federal Express*, 558 F.3d at 852. Therefore, EEOC investigations are not limited to the claims presented by a charging party, but rather any violation that the EEOC discovers in the course of a reasonable investigation of a charge is actionable. *General Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 331 (1980); EEOC v. Astra U.S.A., Inc., 94 F.3d 738, 746 (1st Cir. 1996) (holding that the

> "allegations contained in the charge do not narrowly circumscribe the Commission's investigation" but serve as a "jurisdictional springboard" permitting the EEOC to investigate whether the employer is engaged in any discriminatory practice).

(*Id.* at 7.) EEOC served its determination on Mayo's counsel on September 2, 2014, giving Mayo ten days to comply with the Subpoena.

### B. Procedural History

Mayo filed a Petition to Quash Subpoena Duces Tecum on September 24, 2014. *Mayo Clinic v. Equal Employment Opportunity Commission*, File No. 14-cv-3844 (JNE/TNL), ECF No. 1. After reviewing the petition, this Court entered a case management order setting forth a schedule for argument and hearing on Mayo's Petition. (14-cv-3844, ECF No. 4.) On October 8, 2014, the EEOC filed a Motion for Order to Show Cause Why A Subpoena Should Not Be Enforced By Equal Employment Opportunity Commission. *Equal Employment Opportunity Commission v. Mayo Clinic*, File No. 14-mc-63 (JNE/TNL), ECF No. 1. The EEOC's motion addressed the same core issue as Mayo's petition: the enforceability of the Subpoena. This Court entered a case management order in the EEOC's subpoena-enforcement action on October 22, 2014, that consolidated the briefing and oral argument schedules of the two actions.

## II. ANALYSIS

### A. Mayo's Petition to Quash, 14-cv-3844

The Court will first address Mayo's petition to quash the subpoena. The EEOC asserts that this Court lacks subject matter jurisdiction over Mayo's petition. The EEOC argues that Mayo's action to quash the Subpoena (1) is barred by sovereign immunity and

(2) is not ripe because the EEOC's administrative subpoena is not a final administrative action and no hardship will result if judicial review is withheld. 14-cv-3844, ECF No. 9 at 3-9.

The Court agrees that Mayo's action should be dismissed. First, Title VII contains no unequivocal waiver of sovereign immunity for an employer's action to quash an administrative subpoena, *see*, *e.g.*, *United States v. Mitchell*, 445 U.S. 535, 538 (1980), and statute provides this Court with jurisdiction only "upon application by the Board . . . ." 29 U.S.C. § 161(2) (incorporated by 42 U.S.C. § 2000e-9). Thus, sovereign immunity bars this Court from having jurisdiction over an anticipatory action by Mayo to quash the Subpoena.

Second, the EEOC's issuance of the Subpoena is not a final administrative action, especially where Mayo would not be in contempt for refusing to obey the Subpoena. *See Borg-Warner Protective Servs. Corp. v. U.S. Equal Empl't Opportunity Comm'n*, 245 F.3d 831, 835-36 (D.C. Cir. 2001); *Mississippi Chem. Corp. v. U.S. Equal Empl't Opportunity Comm'n*, 786 F.2d 1013, 1017-18 (11th Cir. 1986); *Ward v. U.S. Equal Empl't Opportunity Comm'n*, 719 F.2d 311, 313-14 (9th Cir. 1983); *Gerator Corp. v. U.S. Equal Empl't Opportunity Comm'n*, 592, F.2d 765, 768 (4th Cir. 1979); *Standing Rock Housing Auth. v. U.S. Equal Empl't Opportunity Comm'n*, 585 F. Supp. 2d 1112, 1118-19 (D.N.D. 2008); *Minn. Sch. Bd. Ass'n Ins. Trust v. U.S. Equal Empl't Opportunity Comm'n*, 184 F. Supp. 2d 899, 909 (2001).

Under these particular circumstances, dismissing Mayo's petition to quash as unripe has no effect on the issues before this Court. The EEOC's enforcement action,

filed shortly after Mayo's anticipatory action, is essentially the inverse of Mayo's petition to quash. The parties raise the same arguments for and against enforcement of the Subpoena in both actions, and Mayo will suffer no prejudice from the dismissal of its petition to quash because its arguments will be addressed in the EEOC's enforcement action. Accordingly, this Court will recommend that Mayo's petition to quash be denied and that action be dismissed with prejudice.

### B. EEOC's Subpoena Should Be Enforced

#### 1. EEOC's Authority to Investigate Unlawful Employment Practices

The Court now turns to the EEOC's petition to enforce the subpoena. "The EEOC is required to investigate a charge of discrimination to determine whether there is reasonable cause to believe that the employer engaged in an unlawful employment practice, and may issue subpoenas in connection with its investigation." *U.S. Equal Empl't Opportunity Comm'n v. Technocrest Sys., Inc.*, 448 F.3d 1035, 1038 (8th Cir. 2006) (citations omitted). "[T]he EEOC can apply to a federal district court to enforce such subpoenas." *U.S. Equal Empl't Opportunity Comm'n v. County of Hennepin*, 623 F. Supp. 29, 31 (D. Minn. 1985).

Such "[a]dministrative subpoena enforcement actions are summary proceedings and involve limited judicial review." *U.S. Equal Empl't Opportunity Comm'n v. United Parcel Serv.*, No. 06-mc-42, 2006 WL 3712941, at *2 (D. Minn. Sept. 1, 2006). The EEOC must demonstrate: "(1) that the subpoena is within the agency's authority; (2) that the agency has satisfied its own procedural requirements; and (3) that the information

sought is relevant to its investigation." *Id.*; *U.S. Equal Empl't Opportunity Comm'n v. Peat, Marwick, Mitchell & Co.*, 775 F.2d 928, 930 (8th Cir. 1985). Where the EEOC makes such a showing, the court will enforce the subpoena "unless the subpoenaed party demonstrates that judicial enforcement of the subpoena would amount to an abuse of the court's process." *Technocrest Sys.*, 448 F.3d at 1039 (internal quotation marks omitted).

The statute granting the EEOC authority to investigate charges of discrimination provides that the EEOC may access "any evidence of any person being investigated" that "relates to unlawful employment practices . . . and is relevant to the charge under investigation." 42 U.S.C. § 2000e–8(a). Although the Supreme Court has described the relevance requirement in § 2000e–8(a) as "not especially constraining," *U.S. Equal Empl't Opportunity Comm'n v. Shell Oil Co.*, 466 U.S. 54, 68 (1984), the Court further explained that courts should not construe the relevance requirement so broadly as to "render[ ] that requirement a nullity," *id.* at 69. Accordingly, "when a court is asked to enforce a Commission subpoena, its responsibility is to 'satisfy itself that the charge is valid and that the material requested is "relevant" to the charge . . . .'" *Univ. of Penn. v. U.S. Equal Empl't Opportunity Comm'n*, 493 U.S. 182, 191 (1990) (quoting *Shell Oil Co.*, 466 U.S. at 72 n. 26).

### 2. Information Sought Is Relevant To EEOC's Investigation

Mayo argues that the EEOC's authority to investigate Gainor's charge is limited to the allegations contained within the charge itself, and therefore the subpoena's request for documents relating to potential class-wide or pattern-and-practice discrimination are not relevant to the charge. "The relevancy requirement is 'not especially constraining' and

9

includes any evidence that 'might cast light on the allegations.'" *U.S. Equal Empl't Opportunity Comm'n v. Schwan's Home Serv.*, 644 F.3d 742, 747 (8th Cir. 2011) (quoting *Shell Oil*, 466 U.S. at 68-69). "The subpoena cannot, however, wander into wholly unrelated areas. For example, the EEOC cannot use an individual charge of racial discrimination to subpoena information relevant to a systemic charge of gender discrimination." *Schwan's Home Serv.*, 644 F.3d at 747-48 (internal quotations and citations omitted). To determine whether the information requested is relevant to the charge under investigation, the court looks to the nature of the charge. *U.S. Equal Empl't Opportunity Comm'n v. United Air Lines, Inc.*, 287 F.3d 643, 654 (7th Cir. 2002).

Mayo argues that because Gainor's charge does not contain class-wide or pattern-or-practice allegations, any requests for documentation beyond those regarding Gainor are outside its subpoena authority in this matter. This Court disagrees. In *U.S. Equal Employment Opportunity Commission v. BNSF Railway Co.*, the charge alleged that BNSF had discriminated against the claimant, a prospective track laborer, by declining to hire him because of a previous medical condition. Civil No. 11-mc-0019 (JNE/JJG), 2011 WL 2261476 (D. Minn. May 17, 2011). While investigating the charge, the EEOC issued a subpoena requesting "an electronic database identifying all individuals that were denied hire for a position requiring medical screening . . . because they were not deemed medically qualified for the job," including the applicants' names, contact information, dates of application, positions applied to, and the reason BNSF gave for their non-hire. *Id.* at *2. Upon review, the court determined that the broad scope of information sought by the EEOC was not relevant to the charge because the charge did not contain

10

allegations of any standardized test or hiring practice that would have been common to all of the potential applicants. *Id.* at *5 ("Here, there was no such employment test. Rather, BNSF utilized a statutorily authorized hiring process to make a conditional offer before seeking medical information about the employee's physical ability to do the job. Unlike the application of a standardized test, this hiring practice involves personalized and discrete decisions made on a case-by-case basis. Given the individualized nature of the background screen and the medical officer's consideration and assessment of unique medical records, the data sought by the EEOC would not provide comparative statistics or a useful context for Wells' charge of discrimination."). The court determined that the information sought related to applicants for the same position nationwide, however, *was* relevant to the EEOC's investigation and ordered the subpoena enforced to that extent. *See id.* at *5.

The instant matter rests on slightly different footing. Gainor's charge of discrimination asserts that after his application for the photographer position was rejected, Mayo "reposted the job opening stating it preferred a female photographer for the job." The charge asserts in plain terms that Mayo discriminated against Gainor by refusing to hire him for the posted photography position because of his sex. Unlike the subpoena at issue in *BNSF*, the Subpoena in this matter seeks information and documentation about applicants for the same position for which Gainor applied. The Subpoena does not seek information about any positions other than photographer positions. Importantly, the Subpoena does not seek information relating to all positions at Mayo or information of applicants in other geographical regions. *See id.* at *2. Moreover,

the court in *BNSF* limited the scope of the subpoena to all job applicants who were not hired as track laborers in the relevant time period. The Subpoena here seeks information regarding all applicants to the position that Gainor applied for—the same limitation the court applied in *BNSF*. *See id.* at *5 ("BNSF has offered to provide the [relevant] information for all job applicants nationwide who were not hired as track laborers [in the relevant time period], and the Court finds this to be a proper limitation on the scope of the subpoena.").

Although the Charge does not contain an explicit allegation of systemic discrimination, Gainor alleges that after Mayo refused to hire him, Mayo reposted the job openings to which he applied with a caveat that female photographers were preferred. To the extent that Mayo argues Gainor was not hired because he was unqualified, this argument is premature. At this time, the underlying merits of the charge are not at issue. *See Shell Oil*, 466 U.S. at 72 n.26; *Univ. of Pa.*, 493 U.S. at 191; *Schwan's Home Serv.*, 644 F.3d 742, 747 (8th Cir. 2011) (holding that "a charge is valid regardless of the strength of its evidentiary foundation"); *Peat, Marwick, Mitchell & Co.*, 775 F.2d 928, 930-33 (8th Cir. 1985). Based on the substance of Ganior's charge, the Court determines that the information sought in the Subpoena is relevant and, therefore, within the scope of the EEOC's investigative authority. *See Schwan's Home Serv.*, 644 F.3d at 748.

### III. CONCLUSION

Based on all the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED THAT:**

1. The EEOC's Motion (14-mc-0063, ECF No. 1) be **GRANTED** and the Subpoena be **ENFORCED**;

2. Mayo's Petition to Quash Subpoena Duces Tecum (14-cv-3844, ECF No. 1) be **DENIED**; and

3. These matters be dismissed.

Dated:  July 21, 2014                              s/ Tony N. Leung
                                                   Tony N. Leung
                                                   United States Magistrate Judge
                                                   District of Minnesota


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before **August 4, 2015**.